UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Donna Jones, | ) | Civil Action No. 5:20-1765-KDW |
|            Plaintiff, | ) | |
| vs. | ) | ORDER |
| Kilolo Kijakazi, Acting Commissioner of Social Security Administration,[1] | ) | |
|            Defendant. | ) | |

This social security matter is before the court pursuant to 28 U.S.C. § 636(c) and Local Civil Rule 83.VII.02 (D.S.C.) for final adjudication, with the consent of the parties, of Plaintiff's petition for judicial review. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to the Social Security Act ("the Act"). The issues before the court are whether the decision is supported by substantial evidence, and whether the Commissioner's decision contains an error of law. Having carefully considered the parties' submissions and the applicable law, the court reverses and remands the Commissioner's decision for the reasons discussed herein.

I.      Relevant Background

      A.      Procedural History

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the court substitutes Kilolo Kijakazi for Andrew Saul as Defendant in this action.

According to her Disability Determination and Transmittal, Plaintiff filed for SSI benefits under Title XVI of the Act on June 25, 2016.[2] Tr. 105. Plaintiff filed her application for DIB on July 19, 2016 alleging a disability onset date of March 25, 2014. Tr. 223-24. Her applications were denied on initial review, Tr. 105-06, and upon reconsideration, Tr. 65-66. Plaintiff requested a hearing by an Administrative Law Judge ("ALJ"). Tr. 144-46. Plaintiff appeared with her counsel at a hearing on October 25, 2018, before ALJ Julie Petri. Tr. 36-64. ALJ Petri issued an unfavorable decision on January 30, 2019, finding Plaintiff was not disabled. Tr. 7-25. On February 15, 2019, Plaintiff requested review of the unfavorable decision. Tr. 209-10. The Appeals Council denied the request for review in a decision dated March 26, 2020. Tr. 1-5. This denial made the ALJ's January 2019 decision the Commissioner's final administrative decision for purposes of judicial review. Tr. 1. Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed on May 6, 2020. ECF No. 1.

B.     Plaintiff's Background

Plaintiff was born in November 1964 and was 49 years old as of her alleged onset date of March 25, 2014. Tr. 236. In her July 19, 2016 Disability Report-Adult form, Plaintiff indicated that she completed the 10th grade,[3] did not attend special education classes, and had not completed any specialized job training or vocational school. Tr. 291. Plaintiff's past relevant work ("PRW") included housekeeping (1981-2013 on and off), textiles machine operator (1993-1995), restaurant cashier (2002), manufacturing janitor (2003-2004), and manufacturing laborer (July 15, 2013 – March 25, 2014). *Id.* Plaintiff indicated she stopped working on March 25, 2014 because of her conditions which she listed as back/spine, sciatica, depression, right foot swollen,

---

[2] The undersigned notes that the SSI Application Summary included in the record is for both claimant Dennis Lee Jones and his spouse Donna Lynn Jones (Plaintiff). Tr. 211-22.
[3] At her administrative hearing Plaintiff testified that the highest grade she completed was the seventh grade. Tr. 56.

arthritis, pneumonia, COPD, and vertigo. Tr. 290. Plaintiff noted her height as 5'6" and her weight as 225 pounds. *Id.*

### C. The Administrative Hearing

Plaintiff and her counsel appeared at her administrative hearing held in Mauldin, South Carolina on October 25, 2018, along with Vocational Expert ("VE") Robert Brabham, Sr. Tr. 36. After an opening statement from her counsel, Tr. 40-41, Plaintiff offered her testimony.

#### 1. Plaintiff's Testimony

In response to questions from the ALJ, Plaintiff confirmed that she was 53 years old and lived in Anderson, South Carolina. Tr. 41. The ALJ noted that Plaintiff had crutches and Plaintiff testified that if she puts pressure on her foot the arch of her foot and her Achilles heel cramps. She stated that with the crutches she did not have to put as much pressure on her foot. *Id.* Plaintiff testified that she was prescribed the crutches in the emergency room when her "foot started swelling up, about four years ago." *Id.* Plaintiff stated that she uses the crutches multiple times a week whenever she has to walk, such as when going to grocery stores or the doctor's office. Tr. 42. Plaintiff stated that she uses her cane around the house. *Id.* Plaintiff testified that she is 5'6" tall and has a stable weight of 200 pounds. *Id.* Plaintiff stated that she is left-handed, married, and lives with her husband. *Id.* Plaintiff testified there was no income coming in the home and they receive charitable assistance with their bills. Tr. 42-43. Plaintiff testified that in 2014 she received a worker's compensation settlement from Fraenkische where she had been employed full-time for over a year on the production line. Tr. 43-44. Plaintiff stated that the heaviest thing she would have to lift (with one other person helping) was a 150-pound box. Tr. 44. Plaintiff stated that she received a "straight cash" settlement after hurting her back. *Id.* The ALJ noted that Plaintiff's highest earnings years were 2009-2010 with IH Services. *Id.* Plaintiff

testified that with IH Services she worked full-time in housekeeping at a Michelin tire plant. Tr. 45. Plaintiff stated that the heaviest things she had to lift were 25- or 30-gallon mop buckets. *Id.*

Plaintiff confirmed that she has a driver's license but has trouble driving due to dizziness from her medication. Tr. 45-46. Plaintiff stated that she got her driver's license so that she could vote, and it had been six months since she last drove. Tr. 46. Plaintiff testified that she stopped working at Fraenkische because she "slipped and fell." *Id.* Plaintiff stated that she did not try to return to work because the company "won't let you come back if you get worker's comp." *Id.* Plaintiff testified that she tried to work elsewhere but she is unable to work because she keeps reinjuring her back. *Id.* Plaintiff stated that she takes Gabapentin for depression, but she does not take anything for pain because the Free Clinic does not have pain medication. Tr. 46-47. Plaintiff stated that she takes another medication for muscle spasms but was unable to remember the name. Tr. 47. Plaintiff testified that she visits the Free Clinic every three months, and if a mental health counselor is available, she will talk with them. *Id.* Plaintiff noted that she does not have insurance and confirmed that limits her access to treatment. Tr. 47-48.

Plaintiff's counsel noted that when Plaintiff visited the Free Clinic on May 16 the records indicated Plaintiff was taking the medications Premarin, Skelaxin, Gabapentin, and Sertraline. Tr. 48. Plaintiff confirmed those were her current medications. *Id.* Plaintiff indicated that she had four prior worker's compensation claims, but the last one was at Fraenkische where she slipped and fell when someone spilled a drink on the floor. *Id.* Plaintiff confirmed that in September 2015 at the Free Clinic she complained of back pain that was going down into her buttocks and right leg. Tr. 49. Plaintiff testified that is still a problem and it seems to be getting worse. *Id.* Plaintiff testified that she was unable to sit in a chair like her attorney was sitting[4] because her "legs would be completely numb." *Id.* Plaintiff testified that she normally sits leaning forward

---

[4] The transcript does not indicate how Plaintiff's attorney was seated.

with her right leg "kind of out to the right-hand side." *Id.* Plaintiff testified that she sits that way when she visits her attorney, her doctor, or when in the waiting room. Tr. 50. Plaintiff stated that she has been unable to sit like her attorney sits "[f]or the last couple years." *Id.* Plaintiff testified that she has had problems with her right leg swelling since the first time she hurt her back and "pulled that sciatica nerve." *Id.* Plaintiff testified that her leg swells more if she stands on it. She stated that she can stand for 10-15 minutes but has to have support or her legs "will give out." Tr. 50-51. Plaintiff confirmed that if she stands for long, she has to hold onto something or use her crutches or cane. Tr. 51. Plaintiff confirmed that when she was seen by a doctor in October 2016, he noted she had been diagnosed with COPD. *Id.* Plaintiff testified that it still affects her and she has breathing problems and coughing. She also stated that she was hospitalized with pneumonia and at that time she stopped smoking. *Id.* Plaintiff testified that she has not smoked in almost two years but she still has problems with breathing because the Free Clinic does not have inhalers. *Id.*

Plaintiff testified that she normally gets up in the morning around 4:30 a.m. and eats breakfast around 7:00 a.m. Tr. 52. Plaintiff testified that between the time she wakes up and has breakfast she tries to get housework done "[s]uch as getting the clothes up, dirty clothes up, or cleaning up or vacuuming or do - - trying to do something to keep moving." *Id.* Plaintiff testified that she must stop and rest during these activities. *Id.* Plaintiff testified that she does not do the laundry, she just gathers the dirty clothes. She stated that her sister comes over once a week to do the washing and drying. Tr. 53. Plaintiff testified that between breakfast and lunch she lies in bed propped up with pillows. *Id.* Plaintiff indicated that she is unable to lie flat because of back pain and breathing problems. Tr. 53-54. She stated that she usually has supper around 6:00 each evening. Tr. 54. Plaintiff testified that between lunchtime and supper she is resting her back in bed. *Id.* Plaintiff stated that she goes to bed between 10:00 and 11:00 at night and has trouble

5

falling asleep and staying asleep. Tr. 54-55. Plaintiff stated that she is unable to lie on her left side because of a herniated disc so she lies in bed propped up. Tr. 55. She also testified that she uses a portable potty because it is too far to walk to the bathroom. *Id.* Plaintiff confirmed that her problems consist of issues with her back, foot, depression, and breathing. *Id.* Plaintiff stated that the biggest problems that keep her from working are her back and walking on her swollen foot. *Id.* Plaintiff confirmed that she did not have a specific foot injury, but she has developed problems over the years along with her back injuries. Tr. 56. Plaintiff stated that the swelling increases during the day and if she does "any kind of walking it swells up. And the arch of [her] foot just cramps up. That's the muscle spasms in [her] foot." *Id.* Plaintiff testified that she wears a size 8 shoe on her left foot and a size 11 shoe on her right foot and has been doing that for four years. *Id.* Plaintiff testified that she "didn't quite finish the eighth grade" and the highest grade she completed was the seventh grade. *Id.*

    2.  Testimony of VE

VE Brabham also testified at the administrative hearing. Tr. 57. The VE classified Plaintiff's past work in housekeeping as an industrial cleaner, Dictionary of Occupational Titles ("DOT") code 381.687-018, SVP 2, and "medium at least." *Id.* He described her work at the manufacturing plant as machine operator II, DOT code 619.685-062, SVP 3, and medium. *Id.* Dr. Brabham noted that both jobs could, at times, be performed as heavy "depending on the parts involved and the equipment being cleaned." Tr. 57-58.

The ALJ asked the VE to assume a hypothetical individual of Plaintiff's age, education, and past work as just described with the following limitations:

> Hypothetical number one is light work, except this hypothetical individual could frequently operate foot controls with her right lower extremity. She could never climb ladders, ropes, or scaffolds. She could occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl. She could have frequent exposure to

> extreme cold or heat, humidity. She could have occasional exposure to workplace hazards. She's further limited to simple, routine tasks performed two hours at a time and occasional interaction with the public, coworkers, and supervisors.

Tr. 58. The VE testified that the individual could not perform Plaintiff's past job noting that he did not think there was "any light version of either of her previous jobs in the last 15 years." *Id.* The VE testified that based on the first hypothetical, eliminating jobs that had foot controls, and in the absence of any difficulties with the upper extremities, there would be some light jobs available. *Id.* The VE stated that there were approximately 360,000 assembler and fabricator jobs available nationwide at the light and unskilled level including DOT code 739.687-078. Tr. 59. He testified:

> The hypothetical would also allow us to consider some of the packers and packager jobs. There are about 400,000 of those, dozens of DOT codes. The light versions here are clothing and garments, cloth, cushions, those types of things. An example of that is 2 and light would include some of the clothing of 789.687-066. It's 2 and light.
>
> And finally, this person, hypothetical, we could also consider some of the simple and safe production inspector jobs. There are about 200,000 of those, dozens of codes. The light ones are primarily things like foods and candies, good clean environments. There is no public in any of these settings . . . . DOT code for these production inspector jobs that are 2 and light would include 529.687-114. All of these are 2. They're all light. There is no public, no foot pedals. And they're indoors, good control of the environment.

*Id.* The ALJ asked the VE if there would be jobs available if "[h]ypothetical number two takes everything from number one, but drops down to sedentary work." *Id.* The VE testified that the same types of jobs as discussed would be included in the sedentary versions. *Id.* The VE stated there are "approximately 80,000 assembler jobs that are sedentary and unskilled." Tr. 60. The VE identified assembler of medical products as an example with DOT number 739.687-086, SVP 2, and sedentary. *Id.* The VE stated that the hypothetical "also allows you to consider the DOT language addressers. These are individuals who apply labels to various materials, catalogs

7

and political flyers, those types of things, 2 and sedentary as you require. DOT code here is 209.587-010." *Id.* The VE stated there are approximately 25,000 addresser jobs. *Id.* The VE also testified that the second hypothetical "could also include some of the simple label cutters, fabric cutters. There are about 40,000 of these jobs nationwide that are SVPs of 2 and sedentary as well. The DOT code here for the cutter positions is 585.685-062. All of these are 2, they're all sedentary." *Id.*

The ALJ stated that "[h]ypothetical number three would go back to one or two. In addition to everything else, this hypothetical individual would be absent from work three or more days per month." Tr. 60. The ALJ asked if there would be any jobs available, and the VE responded that "unequivocally, the answer is no." Tr. 61. The VE testified that three days per month would equate to more than seven weeks of absences in one year and would not be accepted or tolerated. *Id.* The VE noted that "this is not addressed in the DOT. It is addressed in some other DOL publications. And it is addressed in job descriptions and materials that I have collected in my 50 years of experience." *Id.*

In questioning the VE, Plaintiff's counsel confirmed that "any gainfully employed person" must be able to maintain attention for two-hour increments separated by normal breaks or meal periods. Tr. 62. The VE agreed and noted that "if anything is off task more than about five percent, you're not going to be able to maintain employment." Tr. 63. With no further questions, the hearing concluded. *Id.*

II.     Discussion

    A.     The ALJ's Findings

In his January 30, 2019 decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2017 (8D).

2. The claimant has not engaged in substantial gainful activity since March 25, 2014, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*) (3D-8D, 7E, 10E, hearing testimony).

3. The claimant has the following severe impairments: cervical spine and lumbar spine degenerative disc disease, right foot arthritis, COPD, obesity, and depression (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except with the following limitations: she can frequently operate foot controls with her right lower extremity. She can never climb ladder/rope/scaffolds. She can occasionally climb ramp/stairs, balance, stoop, kneel, crouch, and crawl. She can have frequent exposure to extreme cold/heat and humidity. She can have occasional exposure to workplace hazards. She is limited to simple, routine tasks, performed two hours at a time. She can have occasional interaction with the public, coworkers, and supervisors.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on November 30, 1964 and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968) (3D-8D, 7E, 10E, hearing testimony, VE hearing testimony).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

> 11. The claimant has not been under a disability, as defined in the Social Security Act, from March 25, 2014, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 12, 14-15, 23-25.

    B.    Legal Framework

        1.   The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability," defined as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is working; (2) whether the claimant has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[5] (4) whether such impairment prevents claimant from performing PRW; and (5)

---

[5] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, she will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii); § 416.920(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; § 416.926; *Sullivan v. Zebley*,

whether the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520, § 416.920. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) and § 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he/she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. § 404.1520(a), (b); § 416.920(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981)*; see generally Bowen*, 482 U.S. at 146. n.5 (regarding burdens of proof).

2. The Court's Standard of Review

---

493 U.S. 521, 530-31 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner of Social Security made after a hearing to which he was a party. . . ." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d at 290 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try [these cases] de novo, or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (explaining that, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high," as it means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that the conclusion is rational. *See Vitek*, 428 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

III. Analysis

Plaintiff asserts that (1) the ALJ failed to include significant limitations resulting from her impairments in her residual functional capacity ("RFC") assessment; (2) the ALJ erred in determining that her impairments did not meet Listing 1.04; and (3) the ALJ failed to properly evaluate the medical opinion evidence. Pl.'s Br. 2, ECF No. 21. After reviewing the parties' filings, the court will address Plaintiff's allegation of error concerning Listing 1.04 first.

A.     Listing 1.04A

Plaintiff asserts the ALJ failed to properly consider Listing 1.04. Pl.'s Br. 21. Plaintiff argues that "each of the 4 required findings under the Listing are documented in the record." *Id.* at 22. The Commissioner asserts that substantial evidence supports the ALJ's determination that Plaintiff was not presumptively disabled under Listing 1.04A. Def.'s Br. 10, ECF No. 22. The Commissioner contends Plaintiff's claim is without merit as her degenerative disc disease did not result in compromise of a nerve root or the spinal cord as mandated by Listing 1.04A. *Id.* On Reply, Plaintiff argues the ALJ failed to make a proper Listings analysis. Pl.'s Reply 6, ECF No. 23.

"For a claimant to show that [her] impairment matches a listing, it must meet all of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. at 530. It is not enough that the claimant has the diagnosis of a listed impairment; the claimant must also have the findings shown in the listing of that impairment. 20 C.F.R. §§ 404.1525(d), 416.925(d); *see Bowen v. Yuckert*, 482 U.S. at 146 and n.5 (noting the claimant has the burden of showing that his impairment is presumptively disabling at step three of the sequential evaluation and that the Act requires him to furnish medical evidence regarding his condition). The Commissioner compares the symptoms, signs, and laboratory findings of the impairment, as shown in the medical evidence, with the medical criteria for the listed impairment. Medical equivalence can be found if the impairment(s)

13

is/are at least equal in severity and duration to the criteria of any listed impairment. 20 C.F.R. §§ 404.1526(a), 416.926(a). A claimant has to establish that there was a "twelve-month period . . . during which all of the criteria in the Listing of Impairments [were] met." *DeLorme v. Sullivan*, 924 F.2d 841, 847 (9th Cir. 1991) (finding that the claimant's back impairment did not meet the requirements of section 1.05C; remanded on other grounds).

The version of Listing 1.04 in effect at the time of the ALJ's decision provides, in pertinent part:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R., Pt. 404, Subpt. P, App. 1, § 1.04. A claimant's impairment "is medically equivalent to a listed impairment in appendix 1 if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. §§ 404.1526(a), 416.926(a).

At Step Three the ALJ made the following determination:

I specifically reviewed listings 1.04 (in light of AR 15-1(4)),[6] 1.02, 3.02, and SSR

---

[6] In *Radford v. Colvin*, 734 F.3d 288, 294 (4th Cir. 2013), the Fourth Circuit determined that Listing 1.04A did not require all requisite symptoms be present simultaneously. In response to

02-01p, and find that no listing is met or medically equaled, as fully explained below in the RFC analysis section.

Tr. 14. In her discussion of Plaintiff's RFC, the ALJ cited to the following objective evidence regarding Plaintiff's cervical spine and lumbar spine degenerative disc disease:

> October 2014 lumbar spine x-ray showed 6 lumbar-type vertebral bodies with SI probably being transitional, and disc space narrowing between the last 2 lumbar type vertebral bodies (IF/4). March 2015 lumbar spine x-ray showed disc bulge at L4-5, chronic since 2012, without acute change (3F/3). October 2015 spine x-ray showed advanced degenerative disc disease at C5-6; cervical facet joint arthropathy that predominated at C4-5 on the left; and (new) mild degenerative disc changes at L4-5 (3F/12).

Tr. 16. The ALJ also discussed Plaintiff's physical exams noting that "some exams showed positive pertinent findings" including reduced muscle strength and decreased sensation, positive straight leg raises, antalgic gait, and use of assistive device. Tr. 16-17. The ALJ also cites to contrary evidence of full range of motion in the lumbar spine, normal muscle strength, and ability to walk with a steady gait without use of her cane. *Id.* The ALJ concluded:

> In summary, the above objective imaging shows mild findings overall, except for the October 2015 x-ray that showed advanced degenerative disc disease and facet joint arthropathy in the cervical spine (3F/12). However, overall, the claimant has not complained of neck/arm pain. Only one physical exam showed related positive pertinent findings regarding her neck and/or upper extremities (4F/45-46). Again, the above objective imaging shows that the claimant's lumbar spine degenerative disc disease is mild, and her hip x-ray was normal.

Tr. 17.

The court is not convinced of sufficiency of the ALJ's Listing analysis. When "there is at least conflicting evidence in the record" as to whether a claimant satisfies a Listing, the ALJ must explain her determination that the claimant's impairment does not meet or exceed the

---

*Radford*, the SSA issued Acquiescence Ruling 15-1(4) that sets forth a two-step test for application of Listing 1.04A. *See* AR 15-1(4), 80 Fed. Reg. at 57420, 2015 WL 5564523. AR 15-1(4) was rescinded effective April 2, 2021. 85 Fed. Reg. at 79063, 2020 WL 7209986 (replacing Listing 1.04 with Listing 1.15). Because Plaintiff's claim and the ALJ's decision was prior to the recission, AR 15-1(4) and Listing 1.04 remain applicable.

listing. *Radford*, 734 F.3d at 295. This requires an ALJ to compare the plaintiff's actual symptoms to the requirements of any relevant listed impairments in more than a "summary way." *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). The court must consider whether the ALJ's explanation and analysis, as a whole, is sufficient to allow judicial review of the Step Three determination as to the Listing. When the ALJ's analysis of why a claimant fails to meet a listing is insufficient, it is "impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings." *Radford*, 734 F.3d at 295. Here the ALJ notes both normal and abnormal medical findings but she does not explain which evidence corresponds to the Listing criteria or why the normal findings take precedence over the abnormal findings. Accordingly, remand is necessary so that the ALJ may provide the requisite analysis.

      B.      Plaintiff's Remaining Arguments

           1.   The ALJ's RFC Analysis

Plaintiff argues that "the ALJ's RFC failed to reconcile the opinion evidence [s]he relied upon in formulating [her] RFC." Pl.'s Br. 19. In her initial Brief Plaintiff refers specifically to the ALJ attributing significant weight to the opinions of the State agency consultants who opined that Plaintiff would have difficulty understanding, remembering, and carrying out detailed instructions and could perform simple tasks for two-hour periods at a time. *Id.* Plaintiff claims "the ALJ's RFC allows for a much greater level of ability than the opinions [s]he relied upon." *Id.* The Commissioner argues that Plaintiff's assertion is erroneous because the ALJ's RFC does not require a greater ability to function than found in the opinions. Def.'s Br. 14. The Commissioner contends that the ALJ's RFC limitations provide greater restrictions. *Id.* at 15. On reply Plaintiff argues that "the issue is her limitation in understanding, remembering, and carrying out detailed instructions. This poses a direct conflict with the ALJ's acceptance of the

GED reasoning level 2 jobs given by the VE which require a person to have ability to, 'Apply commonsense understanding *to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations.*'" Pl.'s Reply Br. 3 (emphasis in Pl.'s Brief). Plaintiff asserts that this is a "direct conflict" that has not been explained by the ALJ's finding of her ability to perform simple tasks. *Id.*

Because the court is remanding this case so that the ALJ may revisit the Listings analysis, the Commissioner should also consider Plaintiff's more refined argument regarding the ALJ's RFC assessment and the conflict with the exemplar GED level 2 jobs identified by the VE.

2. The ALJ's Consideration of the Opinion Evidence

Plaintiff argues that the ALJ improperly evaluated the opinion evidence of consulting examiner Dr. James Shrouder. Pl.'s Br. 23. The Commissioner argues that the ALJ properly determined Plaintiff's RFC "by considering the opinion evidence with the record as a whole." Def.'s Br. 17. On reply Plaintiff argues "this is a general conclusory statement that is insufficient to support the rejection of Dr. Shrouder's opinion." Pl.'s Reply at 9.

On October 29, 2016, Dr. Shrouder completed an examination of Plaintiff "for the purpose of providing information to the State Disability Office for their use in making a determination of disability and was not done for any diagnostic, treatment, or followup [sic] purposes." Tr. 460. After examination Dr. Shrouder provided the following impression:

> This patient's main complaint or limitation is secondary to lower back pain. She also has what appears to be arthritis of the right hip and probably of other joints. Given these complaints, the patient would have difficulty in lifting, carrying, pushing, pulling. She would also have difficulty walking even moderate distances and probably for sitting for long periods of time too. Her fine and gross motor skills are intact and overhead and forward reaching abilities are normal. Her vision is reduced, but not to a degree that would limit her function. Her hearing is intact. The patient's ability to climb, stoop, bend, crawl, kneel, crouch would also be greatly limited secondary to the above-mentioned complaints. It appears that the patient's depression

17

       is controlled as well as her COPD. Her vertigo certainly would limit her in ability to turn or with position changes. Driving would also be limiting in this regard.

Tr. 462-63.

In her decision the ALJ gave "little weight" to Dr. Shrouder's consultative examination finding his "physical exam findings do not fully support his conclusions[,]" his "opinion is not supported by the objective medical evidence[,]" and his "opinion is not consistent with the longitudinal record." Tr. 22-23. The ALJ cited to specific findings in the record to support her conclusions.

The responsibility for weighing evidence falls on the Commissioner, not the reviewing court. *See Craig v. Chater*, 76 F.3d at 589. Here, as required by SSR 96-2p, the ALJ's decision contained specific reasons for the weight given to Dr. Shrouder's opinion. The court is not to weigh evidence or substitute its judgment for that of the Commissioner, but the court is to determine whether the ALJ's weighing of the evidence is supported by substantial evidence in the record. *See generally Hays v. Sullivan*, 907 F.2d at 1456 (noting judicial review limited to determining whether findings supported by substantial evidence and whether correct law was applied). An ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up "specious inconsistencies," *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992), or has failed to give a sufficient reason for the weight afforded a particular opinion, *see* 20 C.F.R. §§ 404.1527(c), 416.927(c). While the ALJ was required to evaluate the opinion, because Dr. Shrouder was not Plaintiff's treating physician, his opinion was not entitled to controlling weight. *Id.* Here, the ALJ provided specific reasons for the weight given to Dr. Shrouder's opinion. Furthermore, the ALJ followed the applicable regulations regarding how much weight she could give the opinion because Dr. Shrouder was not Plaintiff's treating physician. Tr. 22.

The ALJ's reasons for discounting Dr. Shrouder's opinion are supported by substantial evidence. The court finds that Plaintiff's allegation that the ALJ erred in her consideration of Dr. Shrouder's opinion to be without merit and dismisses this challenge to the ALJ's decision.

IV.     Conclusion

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court cannot determine that the ALJ's decision regarding Listing 1.04A and her RFC assessment are supported by substantial evidence. Therefore, remand is warranted.

The court hereby reverses the decision of the Commissioner pursuant to Sentence Four of 42 U.S.C. § 405(g) and remands the matter to the Commissioner for further proceedings consistent with this order.

IT IS SO ORDERED.

August 30, 2021                                         Kaymani D. West
Florence, South Carolina                                United States Magistrate Judge